REDINGTON *v.* DUNN & TRUSTEE.

The object of the 9th section of chap. 208, Rev. Stat., was, that after the service of a trustee process, the personal earnings of the defendant should not be applied in payment of his debts without his consent.

After the completion of the service of the process upon the trustee, the defendant has a right that his subsequent earnings should, as regards the plaintiff, be exempt from attachment.

A trustee process was served upon the trustee on the 29th of May, the trustee then not being indebted to the defendant. On the 4th of July the trustee, without the knowledge of the defendant, accepted of a discharge of that service, and at the same time the plaintiff caused a new service of the process to be made upon the trustee. *Held,* that the second service upon the trustee was invalid, and that he was not holden.

FOREIGN ATTACHMENT. The trustee, Hazeltine, made disclosure that he was indebted to the principal defendant for his labor, performed between the 29th of May and 4th of July, 1850; that on said 29th of May the deputy sheriff who made

service of the writ in this action, handed to him a copy of the writ, and the trustee understood it to be for the purpose of making service of the writ on him as trustee of the principal defendant; that on the 4th of July the same deputy handed him again a copy of the writ, which was the same paper, or one similar to it, that had been handed to him in May.

At the taking of the disclosure, the defendants' attorney requested the trustee to make the affidavit of the deputy sheriff a part of his disclosure, by annexing it thereto, in which affidavit it was stated that service was made on the trustee in May, and the return written out upon the writ accordingly; that having kept the writ in his, the officer's hands, until July, without having made service thereof on the principal defendant, the officer, by direction of the plaintiff, went to the trustee and asked him if he was willing to accept a discharge of the previous service on him, to which he replied that he was; that the trustee then gave back to the officer the copy of the writ which he had received from the officer at the time of the service in May, and the same copy was again handed to the trustee, who was informed that service would commence from that time, and that the principal defendant had no knowledge of this proceeding. The trustee declined to annex the affidavit to his disclosure. The return of the officer making the service is as follows:

"May 29th, 1850. I then summoned the within named Frederick Hazeltine, as within commanded, by giving to him a true and attested copy of the within writ, and on the 4th day of July, by direction of the plaintiff, I asked the said Hazeltine for the copy I gave him on the 29th May. He gave it me and said he would accept of a discharge, when I made the above service.

J. H. Angier, Deputy Sheriff."

"July 4th, 1850. Then I summoned the within named Frederick Hazeltine, as within commanded, by giving to him a true and attested copy of the within writ.

James H. Angier, Deputy Sheriff."

Redington *v.* Dunn & Trustee.

"July 5th, 1850. Then I summoned the within named E. D. Dunn, as within commanded, by reading to him this writ.

James H. Angier, Deputy Sheriff."

The return under date of 29th May, 1850, is placed upon the back of the writ, immediately beneath the return, under date of 4th July, and this last return appears to have been altered by an erasure, and the insertion of the date as it now is where the erasure was made.

*Bellows,* for the plaintiff.

Upon the disclosure, the trustee is chargeable if the plaintiff may avail himself of the service made on the 4th day of July.

The case shows that the trustee was discharged from the service made on the 29th day of May. The defendant had acquired no rights under the process, as it had not been served upon him. There was no collusive agreement between the parties. The defendant says that the trustee cannot accept of service of the plaintiff's writ, and we understand it has been so decided. That would be evidence of collusion between the plaintiff and the trustee. But may not the plaintiff discharge the trustee before the defendant has acquired any rights under the process? We suppose that at any time the trustee may be discharged.

A person summoned as a trustee is not a defendant, in the ordinary meaning of the word. All that the plaintiff did was to release his attachment of the defendant's property in the hands of the trustee. He might have furnished the trustee with another copy on the 4th day of July. We can see no difference between summoning different persons as trustees and summoning the same person at different times. By § 4, chap. 208, Rev. Stat., the plaintiff may insert the names of as many persons as he may deem necessary, at any time before the process is served upon the principal defendant. From this we infer that even if the discharge of the trustee was not binding upon the defendant, the plaintiff could cause a new service to be made on the trustee at any time before the process is served upon the defendant.

*Bingham*, for the defendant. It is provided by § 9, chap. 208, Rev. Stat., that the trustee shall not be charged on account of the personal services or earnings of the debtor's wife at any time, or on account of any labor performed by the debtor or any of his family after the service of the process, or within fifteen days prior to such service.

The process in this case being served on the 29th day of May, and the indebtedness of the trustee to the defendant being for labor performed by the defendant after that time, the trustee, as a matter of course, must be discharged, unless the subsequent extraordinary and evidently collusive proceedings between the plaintiff and the trustee are conclusive and binding upon the defendant, and the service on the 29th of May thereby vacated, and the 4th of July fixed as the time at which we must consider the service of the process to have been made.

In reference to this matter we take this ground, that any agreement made between the plaintiff and the trustee, without the assent or knowledge of the defendant, whereby the defendant's funds in the hands of the trustee, or his rights, are affected, is, so far as the defendant is concerned, wholly void; especially when such agreement is collusive, and evidently made with a view to render funds of the defendant liable to attachment which otherwise would have been exempt.

Again, how were the rights of the defendant affected by the proceedings subsequent to the 29th of May, if the proceedings are held to be valid so far as the defendant is concerned? By the service of the process on the 29th of May, the property of the defendant in the hands of the trustee was legally attached. This right was acquired by the plaintiff, and at the same time, according to the statute, the defendant acquired the right that any subsequent indebtedness from the trustee to him, on account of his personal labor, should be exempt from attachment on the same process, or from being held by the plaintiff on this process. Relying upon this right he continued to labor for the trustee until the 4th of July, when the plaintiff and the trustee made an arrangement without his knowledge or assent, to vacate the ser-

vice of the 29th of May, and a new service was then made. This arrangement, if binding upon the defendant, enables the plaintiff to hold the defendant's property upon this process, which otherwise could not have been done. In this way the defendant would be deprived of the right he had acquired by the service made on the 29th of May.

*Bellows,* in reply. These are not parties, in the ordinary sense of the word. The defendant has no control over the plaintiff, so as to point out or in any way interfere with the parties whom the plaintiff may bring in. He may summon whom he chooses. Here the plaintiff and the trustee merely agree that the service made on the 29th of May shall go for nothing. This is a matter of no interest to the defendant, and in which he has no right to interfere.

GILCHRIST, C. J. On the 29th of May, after the service of the process in this case, the plaintiff had no right to the earnings of the defendant which had accrued for fifteen days previous, or which should accrue subsequent to that time. It does not appear from the disclosure, that on the 29th of May the trustee was indebted to the defendant, and the question in the case relates to the defendant's earnings subsequent to that day. If the service on that day is still valid, it is clear that the trustee must be discharged, for such is the express provision of the statute. If it was vacated by the agreement made between the plaintiff and the trustee, the latter is chargeable for the amount of the defendant's labor from the 29th of May to a period fifteen days prior to the 4th day of July.

The object of the statute is to exempt from attachment, with some limitations, the personal earnings of the defendant in as unqualified a manner as certain household furniture is exempted. The law does not intend that the fund, upon which in many cases the party relies for his subsistence, shall be applied against his will to the payment of his debts. He is not to permit a debt to accumulate for an indefinite period against the trustee, for that

Redington *v.* Dunn & Trustee.

would be evidence that he did not need the proceeds of his daily labor for his immediate subsistence. But the law has fixed on the period of fifteen days as a reasonable time for such accumulation, and for whatever has accrued prior to that time the trustee is, under ordinary circumstances, chargeable.

It is the service of the process on the trustee which fixes the time after which the earnings of the defendant shall not be held. The whole of the 9th section looks to that, and to that alone. The section has no reference to the service of the writ upon the defendant. As regards kind, it is an ordinary writ of summons; in relation to the trustee, it is a process of foreign attachment. No person summoned as trustee, the section declares, shall be charged " on account of any labor performed by the debtor" after service of the process. If then the service be complete upon the trustee, and if the object be to carry out the intent of the statute, it would seem that the defendant, so far at least as regards the plaintiff, has a right that his earnings subsequent to the service should be free from liability to attachment, without his assent. Otherwise, it will always be in the power of the plaintiff after the service, by notifying the trustee that the attachment is vacated, and at the same time making a new service, to obtain a control over the earnings of the debtor which the statute did not intend he should possess. If the service on the 4th of July was valid, it deprived the statute of any force on this point. It appropriated the defendant's earnings without his assent. We cannot hold it to be valid, because we think that such a conclusion would conflict with the law, and therefore our opinion is that the trustee cannot be holden by virtue of it.

*Trustee discharged.*